UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANTE A. HYNDMAN,

Plaintiff,

-against-

CITY OF NEW ROCHELLE, et al.,

Defendants.

1:26-CV-5701 (LTS)

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Dante A. Hyndman, who appears *pro se*, brings this action asserting claims under 42 U.S.C. § 1983 and under state law. The Court understands Plaintiff's "Proposed First Amended and Supplemental Complaint" (ECF 49) to be Plaintiff's amended complaint and the operative pleading for this action.[1] He seeks damages, injunctive relief, and declaratory relief. Plaintiff names as Defendants: (1) the City of New Rochelle; (2) the County of Westchester; (3) A.M. Zazzarino, who appears to be a Police Officer and a member of the City of New Rochelle's Police Department ("NRPD"); (4) Casey Higginbotham, who is alleged to be "identified on a March 12, 2026 warrant-related notice"; (5) Sergeant Emmanuel Gonzalez, who appears to also be a member of the NRPD; (6) Tony DaCosta Greenidge, Plaintiff's uncle; (7) Belinda Nunez, also known as Belinda Wright; (8) Brandi Hyndman, Plaintiff's sister; (9) Rhonald Hyndman, Plaintiff's father; (10) Stephanie Cunningham; (11) ABC Legal Services, LLC; (12) unidentified "Report-Creation and Evidence John/Jane Does 1-10"; (13) unidentified "Warrant, Notice, Dispatch, and Record John/Jane Does 1-20"; (14) "County Custody and

[1] The Court treats Plaintiff's amended complaint as filed as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). The Court therefore denies Plaintiff's motion for leave to amend (ECF 44) as unnecessary.

Administrative John/Jane Does 1-10"; and (15) "ABC Intake, Quality-Control, and Proof-Revision John/Jane Does 1-10." (ECF 49, at 7-10.) Plaintiff asserts claims under Section 1983 and under state law against the City of New Rochelle, the County of Westchester, Zazzarino, Higginbotham, Gonzalez, Greenidge, Nunez, and the abovementioned unidentified "John Doe" and "Jane Doe" Defendants, with the exception of the "ABC Intake, Quality-Control, and Proof-Revision John/Jane Does 1-10," and asserts only claims under state law against the remaining Defendants (including the "ABC Intake, Quality-Control, and Proof-Revision John/Jane Does 1-10").

Plaintiff filed his original complaint commencing this action on July 5, 2026. He has since, in July and August 2026, filed 48 submissions seeking relief, including ones seeking immediate injunctive relief. Only recently, on August 21, 2026, after he had filed many other submissions, did Plaintiff file his amended complaint, which is now the operative pleading for this action; the amended complaint appears to have mooted at least some of Plaintiff's pending motions and requests for relief. On September 9, 2026, Plaintiff filed in this action a copy of a petition for *mandamus* relief that he originally filed in the United States Court of Appeals for the Second Circuit on September 2, 2026, to initiate a *mandamus* proceeding in that court with respect to this action.[2] (ECF 54.)

For the reasons set forth below, the Court grants Plaintiff leave to file a second amended complaint within 30 days of the date of this order, and the Court denies all other pending motions and requests for relief.

[2] *See In re: Dante A. Hyndman*, No. 26-2497 (2d Cir.). Because Plaintiff's *mandamus* proceeding is pending in the Second Circuit, this Court will not discuss it in this order.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following in his amended complaint[3]: The disputes raised in this action originate with the contested ownership of a private residence located at 738 Pelhamdale Avenue in New Rochelle, New York ("the residence"). It appears that Coral Eudene Greenidge ("Coral"), Plaintiff's maternal grandmother, and the mother of Defendant Tony DaCosta Greenidge ("Tony"), Plaintiff's uncle, originally owned the residence. Upon Coral's death, however, Tony made efforts to become "executor, temporary-executor, co-executor, beneficiary, or property-control authority" with respect to Coral's estate and, thus, made efforts to acquire legal possession and ownership of the residence. (ECF 49, at 15.) Plaintiff disputes Tony's rights to ownership of the residence, including his right to sell it. It appears that, as of July 2, 2026, Tony placed the residence up for sale, and that best and final offers were due by July 10, 2026. Plaintiff states that he and his brother, Ryan Hyndman, "were excluded from meaningful information and access concerning the property while other family members, private occupants, counsel, brokers, and estate actors communicated or acted without a transparent source record." (*Id.* at 17.) In addition, Plaintiff states that "Tony supplied accusations, invoked multiple forums, claimed estate or occupancy authority, benefited from exclusion and criminal process, participated in property-control conduct, and used disputed labels to obtain practical control of" the residence.[4] (*Id.* at 8.)

---

[3] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the amended complaint unless noted otherwise.

[4] Plaintiff also makes allegations regarding information Defendants Rhonald and Brandi Hyndman, his father and sister, may have in connection with the deaths of, funerals of, and property owned by some of his deceased relatives. (*See* ECF 49, at 9.) In addition, he makes allegations about Defendants Stephanie Cunningham, ABC Legal Services, LLC, and the unidentified "ABC Intake, Quality-Control, and Proof-Revision John/Jane Does 1-10" regarding service-of-process issues that he may have had in regard to other litigation. (*See id.* at 9-10, 21-

Plaintiff states that, on November 14, 2024, "Tony reported an e-bike or lock incident at the" residence to the NRPD.[5] (*Id.* at 17.) It appears that, as a result, "Zazzarino interviewed Plaintiff and prepared or adopted a report . . . . [that] attributed to Plaintiff a statement that he cut a bicycle lock with a kitchen knife and left the lock for sanitation."[6] (*Id.*) Plaintiff denies making such a statement. Rather, he asserts "that his actual statement concerned removing or discarding a lock, not cutting the lock with a kitchen knife as an admission of criminal conduct" (*id.*); that the "attributed confession supplied weight to a criminal-mischief narrative, arrest, overnight detention, plea posture, stay-away consequence, and later private use of the criminal label as a property control device" (*id.* at 18); and that the "fabricated statement . . . [was] a foundational event in the later order-of-protection, contempt, arrest, custody, background, and property-exclusion chain."[7] (*Id.*)

Plaintiff "was arrested approximately six times in the broader enforcement sequence and was repeatedly brought into criminal court or custody"; he "alleges two principal custody episodes totaling approximately sixty-five days in the aggregate." (*Id.* at 18-19.) "A March 12, 2026 warrant-related notice bears . . . Higginbotham's name and identifies criminal contempt in

---

23.) The Court does not discuss these allegations in this section because the Court will sever from this action, as misjoined, Plaintiff's claims arising from these allegations. *See infra* at 9-11.

[5] Plaintiff alleges that Tony and Defendant Belinda Nunez "repeatedly supplied or reinforced private accusations, occupancy and danger narratives, and property-control objections while public machinery generated arrests, protective restraints, exclusion, and warrant consequences." (ECF 49, at 32-33.) He asserts that these Defendants' alleged actions "may establish joint action." (*Id.* at 33.)

[6] Plaintiff alleges that "Zazzarino and one or more Report-Creation Does allegedly created, adopted, or forwarded a materially false attributed confession that Plaintiff cut a bicycle lock with a kitchen knife." (ECF 49, at 29.)

[7] Plaintiff states that the "alleged false statement was capable of influencing charging, probable-cause, plea, order-of-protection, custody, and later process decisions and allegedly caused a deprivation of liberty." (ECF 49, at 29.)

the second degree. Plaintiff does not know whether Higginbotham created or merely transmitted it." (*Id.* at 20.) "[R]epeated arrests and custody events did not produce a final merits adjudication of the underlying source questions and instead amplified criminality, flight-risk, remand, background, and property-exclusion optics." (*Id.* at 21.)

Plaintiff asserts that, with respect to the City of New Rochelle, there is "a recurring municipal pattern or custom in which private allegations and local record entries receive[] operational force while native reports, warrant packets, notice sources, correction histories, and audit trials [are] not produced or reconciled after notice." (*Id.* at 31.) As to the County of Westchester, he asserts "that County custody and administrative records amplified or propagated materially unreliable arrest, warrant, remand, classification, bail, release, or background information and that the County failed to preserve or correct those records after notice." (*Id.* at 32.)

In addition to damages, Plaintiff seeks declaratory relief "concerning the authenticity and adverse use of disputed source records without adjudicating probate, title, criminal guilt, or state appellate merits." (*Id.* at 37.) He also seeks "a narrow preservation order." (*Id.*)

## DISCUSSION

### A. Probate exception to the court's subject matter jurisdiction

Liberally construing the amended complaint, it appears that Plaintiff believes that he has a legal interest in the ownership of the residence due to the death of his maternal grandmother, Coral, and, perhaps, due to the death of his own mother, Suzette Sobers-Hyndman ("Suzette"); he also seems to contest the legal interest that Tony purports to have in the ownership of the residence due to Coral's and, perhaps, Suzette's deaths. Under the probate exception to a federal district court's subject matter jurisdiction, however, this court lacks subject matter jurisdiction to: (1) administer an estate, probate a will, or do any other purely probate matter, or (2) "'reach a

[matter] in the custody of a state court.'" *Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007) (quoting *Marshall v. Marshall*, 547 U.S. 293, 312 (2006)). Thus, to the extent that Plaintiff asks this court to adjudicate whether he has a legal interest in the ownership of the residence due to the deaths of his abovementioned deceased relatives, the Court dismisses such claims because, under the probate exception, this court lacks subject matter jurisdiction of such claims for relief. *See* Fed. R. Civ. P. 12(h)(3).

**B. Claims under 42 U.S.C. § 1983 against Tony and Belinda**

Inasmuch as Plaintiff asserts claims of federal constitutional violations under 42 U.S.C. § 1983 against Defendants Tony DaCosta Greenidge ("Tony") and Belinda Nunez ("Belinda"), the Court dismisses such claims. Plaintiff asserts that both Tony and Belinda are "private actor[s]." (ECF 49, at 8.) A claim for relief under Section 1983 must allege facts showing that a defendant acted under color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted)). Private individuals and other private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties . . . ." (internal quotation marks and citations omitted)).

Absent special circumstances suggesting concerted action between a private party and a state actor,[8] *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), a private party summoning the police, reporting a possible crime, seeking a restraining order, or even providing background information to the police does not make that private party a state actor for the purpose of Section 1983 liability. *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (The "provision of background information to a police officer does not by itself make [a private party] a joint participant in state action under Section 1983."); *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) (Buchwald, D.J.) ("[S]ummoning police or requesting that police take action . . . simply does not suffice to constitute joint action or to convert the private party into a state actor. Indeed, even if a private party provides false information to police, . . . such provision alone does not constitute joint action actionable under [Section] 1983." (citations and footnote omitted)), *appeal dismissed*, No. 13-4093 (2d Cir. Nov. 13, 2013) (effective Nov. 27, 2013); *Vazquez v. Combs*, No. 1:04-CV-4189 (GEL), 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) (holding that a private party's "seeking a restraining order" does not convert the private party into a state actor).

Plaintiff alleges nothing to suggest that Tony or Belinda, who are both private individuals, acted as state actors with respect to the alleged events; it appears that they merely reported Plaintiff to the NRPD and may have sought state-court orders that barred Plaintiff from the residence, which do not demonstrate state action and are not sufficient to show a conspiracy

---

[8] For example, to state a claim of conspiracy under Section 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Vague and unsupported assertions of a conspiracy will not suffice to state such a claim. *See, e.g., Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order).

with state actors, such as members of the NRPD, to violate Plaintiff's federal constitutional rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against Tony and Belinda for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. Misjoined remaining claims**

Plaintiff's remaining claims not arising from his arrest by members of the NRPD and his subsequent criminal prosecution in a state court are improperly included in this action ("misjoined") and, therefore, are severed from this action. Rules 18 and 20 of the Federal Rules of Civil Procedure ("Rule 18" and "Rule 20") govern the joinder of claims and parties, respectively. Rule 18 permits a plaintiff to join as many claims as he has against a particular defendant. *See* Fed. R. Civ. P. 18(a). By contrast, under Rule 20, a plaintiff may not pursue unrelated claims against multiple defendants. *See* Fed. R. Civ. P. 20(a)(2); *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009) (Karas, D.J.).

Rule 20(a)(2) permits a plaintiff to join multiple defendants in one action if: (1) a right to relief is asserted against all of the defendants, or the claims arise out of the same transaction, occurrence, or series of transactions, and (2) questions of law or fact are common to all defendants. *See* Fed. R. Civ. P. 20(a)(2). Although courts have interpreted Rule 20(a) liberally to allow related claims to be tried within a single proceeding, *see Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126-27 (2d Cir. 1970), "[i]n the absence of a connection between [the] [d]efendants' alleged misconduct, the mere allegation that [the] [p]laintiff was injured by all [of the] [d]efendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)," *Deskovic*, 673 F. Supp. 2d at 167 (internal quotation marks omitted).

Misjoinder of parties is not a ground for dismissing an action but, under Rule 21 of the Federal Rules of Civil Procedure ("Rule 21"), a court has discretion, at any time, *sua sponte* or on motion, to add or drop a party or to sever a claim. *See* Fed. R. Civ. P. 21. "[I]f a court concludes that defendants have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties or claims from the action." *Deskovic*, 673 F. Supp. 2d at 159-60. In determining whether to sever a claim, courts consider "the two requirements of Rule 20 and additional factors, including (1) whether severance will serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (McMahon, D.J.) (citing cases). Put simply, courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

As discussed above, Plaintiff asserts claims against Tony; Belinda; members of the NRPD; the City of New Rochelle; the County of Westchester; the unidentified "Report-Creation and Evidence John/Jane Does 1-10"; the unidentified "Warrant, Notice, Dispatch, and Record John/Jane Does 1-20"; and the unidentified "County Custody and Administrative John/Jane Does 1-10" regarding his arrests and prosecutions in connection with a dispute about whether he has a legal interest in the ownership of the residence. In addition, he asserts claims against his father and sister, Defendants Rhonald and Brandi Hyndman, regarding information they may have in connection with the deaths of, funerals of, and property owned by some of Plaintiff's deceased relatives. (*See* ECF 49, at 9.) He also asserts claims against Defendants Cunningham; ABC Legal

Services, LLC; and the unidentified "ABC Intake, Quality-Control, and Proof-Revision John/Jane Does 1-10" regarding service-of-process issues that he may have had in regard to other litigation. (*See id.* at 9-10, 21-23.) While there is a logical connection between Plaintiff's claims against Tony; Belinda; members of the NRPD; the City of New Rochelle; the County of Westchester; the unidentified "Report-Creation and Evidence John/Jane Does 1-10," the unidentified "Warrant, Notice, Dispatch, and Record John/Jane Does 1-20"; and the unidentified "County Custody and Administrative John/Jane Does 1-10"; there is no such logical relationship between those claims and Plaintiff's claims against the other abovementioned Defendants (Rhonald Hyndman; Brandi Hyndman; Cunningham; ABC Legal Services, LLC; and the unidentified "ABC Intake, Quality-Control, and Proof-Revision John/Jane Does 1-10"). Accordingly, the Court severs from this action, under Rule 21, and dismisses without prejudice to litigation in a new separate civil action, Plaintiff's claims against Rhonald Hyndman; Brandi Hyndman; Cunningham; ABC Legal Services, LLC; and "ABC Intake, Quality-Control, and Proof-Revision John/Jane Does 1-10."[9] *See* Fed. R. Civ. P. 21.

**D. Claims under Section 1983 against the County of Westchester and the City of New Rochelle**

The Court must also dismiss Plaintiff's claims under Section 1983 against the County of Westchester and the City of New Rochelle. When a plaintiff sues a municipality or other local governmental entity under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's or other local governmental entity's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality or other local governmental entity

[9] The Court declines to order the Clerk of Court to open another civil action in which Plaintiff can pursue these claims, as his allegations concerning these claims do not comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a).

itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality or other local governmental entity, the plaintiff must allege facts showing: (1) the existence of a municipal or other local governmental entity policy, custom, or practice; and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted). If there is no underlying constitutional violation, however, the Court need not examine whether there is such liability under Section 1983. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Plaintiff's allegations regarding both the County of Westchester and the City of New Rochelle are, at best, conclusory, and do not suggest that a policy, custom, or practice of either of these municipalities caused a violation of his federal constitutional rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against these municipalities for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii); *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (a "general and conclusory allegation that there was a policy . . . cannot be the basis of municipal defendant liability under" Section 1983). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to file a second amended complaint in which he asserts Section 1983 claims against either of these municipalities and alleges specific

facts showing that there is or was a policy, custom, or practice of either of these municipalities that has caused a violation of his federal constitutional rights.

**E. Personal involvement with respect Section 1983 claims**

Plaintiff's claims under Section 1983 against Zazzarino, Higginbotham, Gonzalez, the unidentified "Report-Creation and Evidence John/Jane Does 1-10," the unidentified "Warrant, Notice, Dispatch, and Record John/Jane Does 1-20" and the unidentified "County Custody and Administrative John/Jane Does 1-10" must be dismissed for failure to state a claim upon which relief may be granted. To state a claim under Section 1983 against an individual state actor, a plaintiff must allege facts showing that individual's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citation omitted)). An individual state-actor defendant may not be held liable under Section 1983 solely because that individual defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a . . . [government] official liable under [Section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official[.]" *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not specify how and in what manner any of the abovementioned state-actor Defendants are or were directly and personally involved in any of the alleged violations of his federal constitutional rights. Accordingly, the Court dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in a second amended complaint in which he names these

individuals as Defendants and alleges specific facts showing how these individuals are or were directly and personally involved in the alleged violations of his federal constitutional rights.[10]

### F. Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims under Section 1983, the Court grants Plaintiff 30 days' leave to replead his claims, as specified above, in a second amended complaint.

Plaintiff's second amended complaint must provide more facts about his Section 1983 claims. First, Plaintiff must name as Defendants in the second amended complaint's caption[11]

---

[10] To the extent that Plaintiff asserts claims, under Section 1983, of malicious prosecution and fabrication of evidence, neither claim can be pursued at this time because both require a showing of favorable termination of the associated criminal charges. *See, e.g.*, *McDonough v. Smith*, 588 U.S. 109, 117 (2019) (Section 1983 fabrication-of-evidence claim); *Carruthers v. Colton*, 153 F.4th 169, 181-88 (2d Cir. 2025) (Section 1983 malicious prosecution claim). Plaintiff does not allege any facts showing that his criminal charges associated with the abovementioned arrests and prosecutions have been terminated in his favor. The Court therefore dismisses these claims for failure to state a claim on which relief may granted, *see* § 1915(e)(2)(B)(ii), but without prejudice to Plaintiff's refiling such claims, in a separate civil action, should the abovementioned criminal charges be terminated in his favor.

[11] The caption is located on the front page of the second amended complaint. Each person that Plaintiff intends to sue in this civil action must be named as a Defendant and must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the Defendants in the caption. If Plaintiff needs to attach an additional page to list all Defendants, he should write "see attached list" on the first page of the second amended complaint. Any

and in the statement of claim those individuals who were allegedly directly and personally involved in the deprivation of his federal rights, and he must allege, succinctly, facts showing their involvement. If Plaintiff does not know the name of an individual Defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the second amended complaint.[12]

In the "Statement of Claim" section of the second amended complaint, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each Defendant. If Plaintiff has an address for any named Defendant, he must provide it. Plaintiff should include all of the information in the second amended complaint that he wants the Court to consider in deciding whether it states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

---

Defendants named in the caption must also be discussed in the second amended complaint's statement of claim.

[12] For example, an individual Defendant may be identified as: "Police Officer John Doe #1, on duty on August 31, 2026, during the 7 a.m. to 3 p.m. shift." The naming of unidentified "John Doe" or "Jane Doe" Defendants, however, does not toll the three-year limitations period governing claims under Section 1983, and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" or "Jane Doe" Defendants and filing a third amended complaint that includes the identity of any "John Doe" or "Jane Doe" Defendants, their service addresses, and, if appropriate, their badge numbers, before the limitations period for such claims expires. Should Plaintiff seek to add a new claim or party after the relevant limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

Essentially, Plaintiff's second amended complaint should tell the Court: who violated his federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's second amended complaint will completely replace, not supplement, his original and amended complaints, any facts or claims that Plaintiff wants to include from the original and amended complaints must be repeated in the second amended complaint. Plaintiff should not, however, reassert any claims in his second amended complaint that were dismissed in this order without leave to replead or were severed in this order from this action under Rule 21 due to misjoinder. The Court reminds Plaintiff that Rule 8 requires a complaint to have a *short and plain* statement of claim that does not contain information that is not relevant to the claims being raised. *See* Fed. R. Civ. P. 8(a).

**CONCLUSION**

The Court dismisses, under the probate exception to this court's subject matter jurisdiction, Plaintiff's claims in which he asks this Court to adjudicate whether he has a legal interest in the ownership of the residence due to the deaths of his relatives, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Plaintiff is not permitted to replead these claims in a second amended complaint filed in this action.

The Court dismisses Plaintiff's claims under 42 U.S.C. § 1983 against Defendants Tony DaCosta Greenidge and Belinda Nunez for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is not permitted to replead these claims in a second amended complaint filed in this action.

The Court severs from this action, under Rule 21 of the Federal Rules of Civil Procedure, and dismisses without prejudice to litigation in a new separate civil action, Plaintiff's claims against Rhonald Hyndman; Brandi Hyndman; Cunningham; ABC Legal Services, LLC; and

"ABC Intake, Quality-Control, and Proof-Revision John/Jane Does 1-10." The Court declines to direct the Clerk of Court to open such claims in new separate civil action. *See* Fed. R. Civ. P. 8(a). Plaintiff is not permitted to replead these claims in a second amended complaint filed in this action.

The Court dismisses Plaintiff's remaining claims under Section 1983 against the County of Westchester; the City of New Rochelle; Zazzarino; Higginbotham; Gonzalez; the unidentified "Report-Creation and Evidence John/Jane Does 1-10"; the unidentified "Warrant, Notice, Dispatch, and Record John/Jane Does 1-20"; and the unidentified "County Custody and Administrative John/Jane Does 1-10" for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in a second amended complaint, addressing the deficiencies specified above, within 30 days of the date of this order.

If Plaintiff fails to file a second amended complaint within this time allowed, the Court will dismiss this action for the reasons set forth in this order. The additional effect of that dismissal will be that the Court declines to consider, under its supplemental jurisdiction, Plaintiff's remaining claims under state law. *See* 28 U.S.C. § 1367(c)(3).

The Court denies Plaintiff's motion for leave to amend (ECF 44) as unnecessary.

Because Plaintiff does not allege that he attended and completed the relevant training course, either in person or online, the Court denies Plaintiff's motion for permission for electronic case fling (ECF 6) without prejudice to his filing another such motion once he has completed that course.

In light of the deficiencies in his amended complaint, and because Plaintiff's filing of an amended complaint appears to have mooted at least some of his pending motions and requests for relief, the Court denies all of Plaintiff's other pending motions and requests for relief.

Accordingly, the Court directs the Clerk of Court to terminate ECF 6, 7, 9, 10, 11, 25, 28, 34, 44, and 50.

The Court also directs the Clerk of Court to change the nature of suit ("NOS") code for this action to 550. The Court informs Plaintiff that this NOS code redesignation is merely for the purposes of the court's administrative filing records and has nothing to do with the Court's adjudication of the merits of his claims in this action; the fact that this action is redesignated with a "prisoner" NOS code is irrelevant to the merits of his claims.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: September 15, 2026
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge